IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ENTREPRENEUR MEDIA, INC.               *

       Plaintiff,                     *

       v.                       *       Civil Action No. RDB-12-1970

JMD ENTERTAINMENT GROUP, LLC,   *
*et al.*,
                            *

       Defendants.

                            *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiff Entrepreneur Media, Inc. ("EMI") filed this action against corporate Defendants JMD Entertainment Group, LLC and JMD Entertainment and Media Group (the "corporate Defendants") and individual Defendant Janice McLean-Deloatch ("Ms. McLean-Deloatch"). Plaintiff's Complaint (ECF No. 1) alleges federal trademark infringement and federal false designation of origin/unfair competition, pursuant to the Lanham Act, 15 U.S.C. §§ 1114, 1125(a). Pending before this Court are Plaintiff's Motion for Default Judgment (ECF No. 27) against the corporate Defendants and Defendant Janice McLean-Deloatch's Motion to Deny Entry of and Request for Entry of Default Order (ECF No. 24), which this Court construes as a Motion to Set Aside Default Judgment. This Court has reviewed the parties' submissions and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons that follow, Plaintiff's Motion for Default Judgment (ECF No. 27) is GRANTED and Defendant Janice McLean-Deloatch's Motion to Deny Entry of and Request for Entry of Default Order (ECF No. 24) is DENIED.

## BACKGROUND

Plaintiff Entrepreneur Media, Inc. ("EMI") filed a Complaint on July 2, 2012 against corporate Defendants JMD Entertainment Group, LLC and JMD Entertainment and Media Group (the "corporate Defendants") and individual Defendant Janice McLean-Deloatch ("Ms. McLean-Deloatch") alleging federal trademark infringement and federal false designation of origin/unfair competition pursuant to the Lanham Act, 15 U.S.C. §§ 1114, 1125(a). Compl. ¶ 6, ECF No. 1. EMI is a California corporation that has provided goods and services to businesses, business owners, and prospective business owners for over thirty years. *Id.* ¶ 10. EMI owns the ENTREPRENEUR® Mark, as well as seven other marks (collectively the "EMI Marks") that incorporate the term "ENTREPRENEUR." *Id.* ¶¶ 25-26. Three of the EMI Marks are incontestable pursuant to 15 U.S.C. § 1065.[1] *Id.* ¶ 27. EMI has United States federal registrations for all eight of the EMI marks (collectively the "EMI Registrations"). *Id.* ¶ 25. EMI has conducted the majority of its business using the EMI Marks, including publishing and selling books, e-books, and magazines; conducting educational services including seminars and workshops; operating at least four different websites; and launching applications for mobile devices. *Id.* ¶¶ 11-12, 14-20. EMI has acquired both fame and goodwill, which have resulted in numerous honors, awards, and co-branding business relationships. *Id.* ¶¶ 21-24.

The two corporate Defendants JMD Entertainment Group, LLC and JMD Entertainment and Media Group are Maryland business entities. *Id.* ¶¶ 3-4. Individual Defendant Janice McLean-Deloatch is the president and founder of both corporate Defendants. *Id.* ¶ 2. The corporate Defendants have used the ENTREPRENEURS EDGE Mark in the course of their business. *Id.* ¶ 34-38. JMD Entertainment Group, LLC is the applicant of record for the

---

[1] The incontestable marks are registered as 1,453,968; 2,263,883; and 2,502,032. As stated in 15 U.S.C. § 1065, a mark becomes incontestable if it has "been in continuous use for five consecutive years subsequent to the date of . . . registration and is still in use in commerce."

currently pending application for federal registration of the ENTREPRENEURS EDGE trademark, which was filed on November 6, 2009. *Id.* ¶ 3; Attach. 9, ECF No. 27. EMI alleges that both corporate Defendants' use of the unregistered ENTREPRENEURS EDGE mark violates EMI's intellectual property rights. Compl. ¶ 43. Specifically, EMI claims federal trademark infringement and federal false designation of origin/unfair competition. EMI alleges that the ENTREPRENEURS EDGE mark is confusingly similar to the registered EMI Marks, and that as a result of the corporate Defendants' use of the ENTREPRENEURS EDGE mark, EMI has suffered harm. *Id.* ¶¶ 49, 51.

On September 26, 2012, EMI served the Complaint (ECF No. 1) on the corporate Defendants. To date, both corporate Defendants remain unrepresented by counsel despite the fact that they, as corporations, may not proceed in this action without counsel. *See* Local Rule 101.1(a). Since EMI filed its Complaint, Ms. McLean-Deloatch, who is proceeding *pro se*, has twice sought an extension of time to obtain an attorney and file responsive pleadings. On October 12, 2012, this Court granted a Motion for Continuance (ECF No. 13), which gave the Defendants an additional thirty days to file an answer. On November 13, 2012, Ms. McLean-Deloatch requested a second extension (ECF No. 14), which this Court granted in an Order (ECF No. 17) dated November 29, 2012. This Order extended the Defendants' deadline for filing responsive pleadings until December 10, 2012. In the Order, this Court specified that Local Rule 101.1(a) requires the two corporate Defendants to retain counsel, and that this Court would entertain appropriate motions for default judgment if there was continued failure by the Defendants to file appropriate pleadings. Order 2, ECF No. 17.

By failing to retain counsel and file an answer, the corporate Defendants have not taken any action in the course of this litigation. On December 13, 2012, EMI filed a Motion for

Clerk's Entry of Default (ECF No. 20) against the two corporate Defendants for their failure to submit an answer in accordance with Local Rule 101.1(a). On December 14, 2012, the Clerk of the Court filed Entry of Default (ECF No. 21). On February 6, 2013, EMI filed the subject Motion for Default Judgment (ECF No. 27). EMI pursues this Motion only against the two corporate Defendants, and not as to individual Defendant Janice McLean-Deloatch.

**STANDARD OF REVIEW**

Entries of default and default judgments are governed by Rule 55 of the Federal Rules of Civil Procedure. Rule 55(a) provides that "[w]hen a party . . . has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." If, after entry of default, the plaintiff's complaint does not specify a "sum certain" amount of damages, the court may enter a default judgment against the defendant pursuant to Rule 55(b)(2). In considering a motion for default judgment, this Court accepts as true the well-pleaded factual allegations in the complaint as to liability. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780-81 (4th Cir. 2001). However, "liability is not deemed established simply because of the default . . . and the court, in its discretion, may require some proof of the facts that must be established in order to determine liability." 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2688 (3d ed. 1998); *see also Ryan*, 253 F.3d at 780-81. Although the United States Court of Appeals for the Fourth Circuit has a "strong policy that cases be decided on the merits," *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), default judgment "is appropriate when the adversary process has been halted because of an essentially unresponsive party," *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005).

If the court finds that liability is established, it must then turn to the determination of

damages. *See Ryan*, 253 F.3d at 780-81. The court must make an independent determination regarding damages and cannot accept as true factual allegations of damages. *See Lawbaugh*, 359 F. Supp. 2d at 422. Rule 54(c) of the Federal Rules of Civil Procedure limits the type and amount of damages that may be entered as a result of a party's default: "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Where a complaint does not specify an amount, "the court is required to make an independent determination of the sum to be awarded." *Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001) (citing *S.E.C. v. Mgmt. Dynamics, Inc.*, 515 F.2d 801, 814 (2d Cir. 1975)). While the court may conduct an evidentiary hearing to determine damages, it is not required to do so; it may rely instead on affidavits or documentary evidence in the record to determine the appropriate sum. *See, e.g.*, *Mongue v. Portofino Ristorante*, No. WDQ-09-3144, 2010 WL 4629898, at *3-4 (D. Md. May 25, 2010) (collecting cases); *see also* 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2688 (3d ed. Supp. 2010).

## ANALYSIS

By failing to retain counsel and file an answer in accordance with this Court's Local Rules, Defendants JMD Entertainment Group, LLC and JMD Entertainment and Media Group (the "corporate Defendants") have failed to defend in this action. Accordingly, the Clerk of the Court has filed an entry of default (ECF No. 21). Default judgment "is appropriate when the adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005). Plaintiff Entrepreneur Media, Inc. ("EMI") is therefore entitled to default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2). Default judgment is entered in favor of Plaintiff EMI and Defendant Janice McLean-Deloatch's

Motion to Deny Entry of and Request for Entry of Default Order (ECF No. 24), which this Court

construes as a Motion to Set Aside Default Judgment is therefore DENIED.

This Court first reviews the allegations supporting the corporate Defendants' liability and

then determines injunctive relief and the appropriate amount of damages. In determining

injunctive relief and damages, this Court finds that no evidentiary hearing is necessary and

instead relies on the affidavits and other evidence in the record. *See, e.g., Mongue*, 2010 WL

4629898, at *3-4.

## I.   Liability

In considering a motion for default judgment, this Court accepts as true the well-pleaded

factual allegations in the complaint as to liability. *See Ryan v. Homecomings Fin. Network*, 253

F.3d 778, 780-81 (4th Cir. 2001). Nevertheless, this court must determine "whether the well-

pleaded allegations . . . support the relief sought in this action. *Id.* at 780. EMI has brought both

a federal trademark infringement claim and a claim of federal false designation of origin/unfair

competition. *See* Compl. ¶ 6 (ECF No. 1).

To state a federal trademark infringement claim, a plaintiff must prove (1) that it owns a

valid mark; (2) that the defendant used the mark "in commerce" and without plaintiff's

authorization; (3) that the defendant used the mark (or an imitation of it) "in connection with the

sale, offering for sale, distribution, or advertising" of goods or services; and (4) that the

defendant's use of the mark is likely to confuse consumers. *Rosetta Stone Ltd. v. Google, Inc.*,

676 F.3d 144, 152 (4th Cir. 2012) (citing 15 U.S.C. § 1114(1)(a)); *see also People for the Ethical

Treatment of Animals v. Doughney*, 263 F.3d 359, 364 (4th Cir. 2001) (quoting 15 U.S.C.

§§ 1114, 1125(a)). The Fourth Circuit has noted that the test for a false designation of

origin/unfair competition claim is essentially the same as the test for trademark infringement.

*Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 930 (4th Cir. 1995).

EMI has successfully made out claims of federal trademark infringement and federal false designation of origin/unfair competition. First, EMI sufficiently claims that it owns a mark. *Rosetta Stone Ltd.*, 676 F.3d at 152 (citing 15 U.S.C. § 1114(1)(a)). EMI has obtained United States federal registrations for the eight EMI Marks including "ENTREPRENEUR," "ENTREPRENEUR.COM," "ENTREPRENEUR CONNECT," "ENTREPRENEUR'S STARTUPS," "ENTREPRENERUENESPANOL.COM," and "ENTREPRENEUR PRESS." The federal registrations of the EMI marks constitute prima facie evidence that the marks are valid. Compl. ¶ 28. Moreover, three of the EMI Marks are incontestable pursuant to 15 U.S.C. § 1065 because they have been in continuous use for at least five consecutive years subsequent to the date of their registration and are still in use in commerce. [2] Furthermore, the United States Court of Appeals for the Ninth Circuit, the United States District Court for the Central District of California, and the United States District Court for the Eastern District of Virginia have recognized the EMI Marks at issue as valid, strong, and distinctive. *See Entrepreneur Media, Inc. v. Smith*, No. CV 98-3607 FMC (CTx), 2004 U.S. Dist. LEXIS 24078 (C.D. Cal. June 23, 2004); *Entrepreneur Media, Inc. v. Smith*, No. 03-56431, 101 F. App'x 212, 2004 U.S. App. LEXIS 11567 (9th Cir. 2004); *Entrepreneur Media, Inc. v. seattleentrepreneur.com*, No. 1:11cv0409 (LMB/JFA) (E.D. Va. Dec. 6, 2011) (PACER).

Second, EMI sufficiently claims that the corporate Defendants used the mark "in commerce" and "in connection with the sale, offering for sale, distribution, or advertising of goods or services." *Rosetta Stone Ltd.*, 676 F.3d at 152 (citing 15 U.S.C. § 1114(1)(a)). EMI asserts that the corporate Defendants use the mark "ENTREPRENEURS EDGE" in the course of business. Compl. ¶ 34. Specifically, EMI alleges that the corporate Defendants not only

---

[2] See *supra* note 2.

incorporate this mark in the domain name of their websites, but also have used the mark in connection with their Facebook page, Twitter account, and YouTube channel. *Id.* ¶¶ 35-38.

Finally, EMI sufficiently claims that the corporate Defendants "used the mark in a manner likely to confuse consumers." *Rosetta Stone Ltd.*, 676 F.3d at 152 (citing 15 U.S.C. § 1114(1)(a)). The Fourth Circuit has implemented a nine-factor test to determine the likelihood of confusion. *Id.* (citing *George & Co., LLC v. Imagination Entm't Ltd.,* 575 F.3d 383, 393 (4th Cir. 2009)). These nine factors are (1) the strength or distinctiveness of the plaintiff's mark as actually used in the marketplace; (2) the similarity of the two marks to consumers; (3) the similarity of the goods or services that the marks identify; (4) the similarity of the facilities used by the markholders; (5) the similarity of advertising used by the markholders; (6) the defendant's intent; (7) actual confusion; (8) the quality of the defendant's product; and (9) the sophistication of the consuming public. *Id.* The Fourth Circuit has also cautioned that these factors "are not always weighted equally, and not all factors are relevant in every case." *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, 259-60 (4th Cir. 2007).

This Court finds that EMI satisfies this test for a number of reasons. First, EMI asserts that the EMI Marks are strong and distinctive. Compl. ¶ 47. The ENTREPRENEUR® Mark has been used for over thirty years and is recognized as a valid, strong, and distinct mark by federal district courts. *Id*. In fact, the United States District Court for the Central District of California held that this mark "has acquired secondary meaning." *See Entrepreneur Media, Inc.*, 2004 U.S. Dist. LEXIS 24078. Additionally, the corporate Defendants have incorporated the entirety of the ENTREPRENEUR® Mark into its own mark, ENTREPRENEURS EDGE. Such total incorporation supports the similarity of the two marks. That EMI and the corporate Defendants offer closely related products and services is another factor suggesting likelihood of confusion.

*Id.* ¶ 49. Finally, EMI and the corporate Defendants operate in the same market area, serving the needs of small businesses. *Id.* ¶¶ 10-24, 34-42. Accordingly, this Court finds that EMI's well-pleaded factual allegations fully support their claims of federal trademark infringement and federal false designation of origin/unfair competition against the corporate Defendants, and default judgment IS ENTERED against them.

## II.     Relief Requested by EMI

For the federal trademark violations and federal false designation of origin/unfair competition, EMI seeks two forms of relief: a permanent injunction and damages. Specifically, EMI seeks to permanently enjoin Defendants JMD Entertainment Group, LLC and JMD Entertainment and Media Group from using any mark, including the ENTREPRENEURS EDGE Mark, which is similar and confusing to the EMI Marks. EMI also seeks damages, costs, and attorneys' fees.

### A. *Permanent Injunction*

Under Section 34 of the Lanham Act, a court has "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title." 15 U.S.C. § 1116(a). Permanent injunctive relief is appropriate when a Plaintiff demonstrates (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange*, LLC, 547 U.S. 388, 391 (2006) (citing *Weinberger v. Romero-Barcelo,* 456 U.S. 305, 311–313 (1982)). "The

decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion." *Id.* (citing *Romero-Barcelo,* 456 U.S. at 320).

This Court finds that permanent injunctive relief is appropriate in this case. First, EMI has suffered an irreparable injury. The Fourth Circuit has held that irreparable injury regularly follows from trademark infringement. *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.,* 43 F.3d 922, 939 (4th Cir. 1995) (citing *Wynn Oil Co. v. Am. Way Serv. Corp.,* 943 F.2d 595, 608 (6th Cir. 1991)). Moreover, this Court has held that damage to a business's reputation and goodwill "may fairly be characterized as 'irreparable' in nature." *Innovative Value Corp. v. Bluestone Fin., LLC*, No. DKC 2009–0111, 2009 WL 3348231 (D. Md. Oct. 15, 2009). EMI asserts that the corporate Defendants "attempted to trade on EMI's goodwill and reputation, and have continued to do so even after EMI expressed concerns about their mark several times and opposed their trademark application." Mot. for Default J. 14. For all of these reasons, EMI meets the first prong of the *eBay* test.

Second, monetary damages are inadequate to compensate for EMI's injury. The corporate Defendants' utter lack of response signals a threat of continued infringement. *See Innovative Value Corp.*, 2009 WL 3348231 (finding, based on defendant's failure to participate in litigation and continuance of infringement despite two cease-and-desist letters, that remedies at law were insufficient to compensate for plaintiff's injuries). Third, the balance of hardships tips in EMI's favor. The corporate Defendants are operating their business in direct violation of the Lanham Act. Finally, the public interest would not be disserved by a permanent injunction. This Court has held that "there is greater public benefit in securing the integrity of [a] Plaintiffs'

mark than in allowing [a] Defendant to continue to use the mark in violation of [that] Plaintiffs' rights." *Id.* at \*3.

Accordingly, this Court ORDERS permanent injunctive relief as provided in the accompanying Order. Briefly, the corporate Defendants are restrained from:

> (1) Using the ENTREPRENEURS EDGE mark or the EMI Marks in connection with of Defendants' products or services;
>
> (2) Using any false designation of origin likely to lead the consuming public to believe that any of Defendants' products or services is associated with EMI;
>
> (3) Using any domain name that contains any of the EMI Marks including entrepreneursedge.tv;
>
> (4) Advertising any product or service under the ENTREPRENEURS EDGE mark through any means, including Defendants' Facebook page, Twitter Feed, and YouTube channel; and
>
> (5) Registering any domain name that contains any of the EMI Marks.

B. *Damages*

As noted, pursuant to Rule 54(c) of the Federal Rules of Civil Procedure, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." In the present case, EMI's pleadings satisfy this requirement. Specifically, EMI seeks damages, costs, and attorneys' fees. This Court has held that as long as the defendant receives notice that some damages may be awarded, allegations and supporting affidavits regarding damages suffice to support a default judgment for money damages. *See Mongue*, 751 F. Supp. 2d at 796-97. In this case, the corporate Defendants had notice of the damages sought by EMI through the

Complaint and their own internal records. Jennifer L. Barry and Kelli Moro's affidavits fully

support Plaintiff's request for default judgment. *See* Attachs. 1 & 3, ECF No. 27.

1. Profits

EMI seeks damages in the amount of $18,125.90, which it asserts is a reasonable

estimation of the profits that the corporate Defendants reaped from their unlawful use of the

ENTREPRENEURS EDGE Mark. Under section 1117(a) of Title 15, a successful plaintiff is

entitled to recover a defendant's profits "subject to the provisions of sections 1111 and 1114 of

this title, and subject to the principles of equity" when it has been established that there has been

a "violation of any right of the registrant of a mark registered in the Patent and Trademark Office

[or] a violation under section 1125(a) or (d) of this title." Section 1117(a) also provides that,

"[i]n assessing profits the plaintiff shall be required to prove defendant's sales only." *Id.* To

satisfy the burden of proving defendant's sales, the injured party need only produce evidence

establishing a "reasonable estimate" of defendant's sales. *Hospitality Int'l v. Mahtani*, 1998 WL

35296447, *8 (M.D.N.C. Aug. 3, 1998) (citing *Louis Vuitton S.A. v. Downtown Luggage*

*Ctr.,* 706 F. Supp. 839 (S.D. Fla. 1988)). The burden is on the defendant, not the plaintiff, to

prove the "elements of cost or deduction claimed." *Id.* at *10 (citing 15 U.S.C. § 1117(a)).

"Thus, when a trademark plaintiff offers evidence of infringing sales and the infringer fails to

carry its statutory burden to offer evidence as to the costs of goods sold, then the profits to which

the plaintiff is entitled under the Lanham Act are equal to the infringer's gross sales." *Id.*

In this case, EMI provided a reasonable basis for estimating the corporate

Defendants' sales to have been at least $18,125.90 during the time that the corporate

Defendants were violating 15 U.S.C. § 1125. The corporate Defendants have failed to offer any

evidence to rebut this alleged amount. Accordingly, this Court finds that $18,125.90 is a

reasonable estimate of the Defendants sales and AWARDS damages in the amount of $18,125.90 to EMI.

EMI also seeks treble damages pursuant to 15 U.S.C. § 1117(a). Section 1117(a) provides, "[i]n assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount." This Court has noted that, "[u]nder the amended Lanham Trade–Mark Act, absent 'extenuating circumstances,' federal courts are expected, not merely authorized, to enter judgment for three times" the amount of damages where a defendants infringement is intentional. *Microsoft Corp. v. Grey Computer*, 910 F. Supp. 1077, 1093 (quoting *Microsoft Corp. v. CMOS Techs.,* 872 F.Supp. 1329, 1339 (D.N.J. 1994)). "There is no bright line rule for what constitutes extenuating circumstances. Rather, courts must make a case-by-case analysis." *Id.* EMI argues that treble damages are warranted due to Defendants' knowing, willful, and intentional infringement of EMI's Marks. Mot. for Default Judgment 16. However, this Court finds that extenuating circumstances exist in this case. Congress has noted that, "[w]here the defendant is an 'unsophisticated individual, operating on a small scale, for whom the imposition of treble damages would mean that he or she would be unable to support his or her family,' treble damages may be inappropriate." *Grey Computer*, 910 F. Supp. at 1093 (quoting Joint Explanatory Statement, 130 Cong. Record H. 12,076 at 12,083 (Oct. 10, 1984)). In this case, the corporate Defendants are small businesses facing financial hardship. *See* Individual Def. Ms. McLean-Deloatch's Mot. for Continuance, ECF No. 14. This financial hardship has prevented Defendants from retaining counsel in this case. In light of these circumstances, this Court finds that treble damages are not warranted.

### 2. Costs and Fees

Finally, EMI requests both costs and fees resulting from this litigation. Rule 54(d)(1) of the Federal Rules of Civil Procedure provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs . . . should be allowed to the prevailing party." The Lanham Act expressly provides that a successful plaintiff can recover its costs. 15 U.S.C. § 1117(a). Because EMI is the prevailing party in this action, it is entitled to recover the costs it incurred in this case. As set forth in the accompanying order, EMI must submit a request for costs in accordance with the procedures and deadlines as set forth in Federal Rule of Civil Procedure 54(d) and Local Rules 109.1 and 109.2(b).

EMI also seeks attorneys' fees. Section § 1117(a) of Title 15 allows a court to award reasonable attorney fees to the prevailing party "in exceptional circumstances." Under the amended Lanham Act, unless a court finds "extenuating circumstances," it is expected to grant attorneys' fees. *Grey Computer*, 910 F. Supp. at 1093 (quoting *CMOS Techs.,* 872 F.Supp. at 1339). EMI argues that it is entitled to attorneys' fees because of Defendants' intentional and willful conduct. Mot. for Default Judgment 21. As noted above, this Court finds that there are extenuating circumstances in this case, because the corporate Defendants are small businesses facing financial hardship. For the same reasons that this Court did not grant treble damages to EMI, this Court does not award attorneys' fees to EMI.

### CONCLUSION

For the reasons stated above, the Plaintiff Entrepreneur Media, Inc.'s Motion for Default Judgment (ECF No. 27) is GRANTED. Defendant Janice McLean-Deloatch's Motion to Deny Entry of and Request for Entry of Default Order (ECF No. 24), which this Court construes as a Motion to Set Aside Default Judgment, is DENIED. This Court ORDERS a permanent

injunction as provided in the accompanying Order, and grants $18,125.90 in damages for profits

the Defendants reaped from their unlawful use of the ENTREPRENEURS EDGE Mark. In

addition, Plaintiff is entitled to the costs of litigation pursuant to 15 U.S.C. § 1117(a) as provided

in the accompanying Order. However, due to the extenuating circumstances in this case, this

Court shall not grant treble damages or attorneys' fees to the Plaintiff.

A separate Order follows.

Dated: July 23, 2013

_____/s/_____
Richard D. Bennett
United States District Judge